Good afternoon, Your Honors. My name is Peter Sessions. I'd like to save one minute for rebuttal, if I may. What's your clock? I will. Thank you, Your Honor. This is a case with a long history and many issues, but fortunately, at this point, all but one of those issues has been resolved. It's not in dispute. There's no dispute the plaintiff was and is disabled. There's no dispute that as a disabled employee, he was eligible for a waiver of premium under Delta's life insurance plan. And there's also no dispute that defendants mishandled his disability claim. That's already been resolved by the district court below and by this court. Finally, there shouldn't be any dispute that the entire point of the first litigation in this matter was to essentially turn back the clock, to reset plaintiff's status under Delta's various benefit plans. The idea was to make him eligible and entitled to all the benefits that he would have been entitled to, but it's not in his claim in the first place. Counsel, could you help me on an issue that's of concern to me? There's no question, as you say, that he alleged in his complaint in the first round of this case that he was entitled to the waiver of premiums on the life insurance. There's also no question that he lost in district court on that point, lost erroneously. That's why we reversed and remanded, but he lost. But it doesn't look like he appealed the waiver of premiums issue. So why isn't he stuck with the decision? Well, Your Honor says he lost on the waiver of premium issue. Is Your Honor referring to the judgment in the first litigation? Correct. Correct. I think that's a misinterpretation of the judgment. The first claim for relief in the first litigation, I'm talking about the fourth amended complaint, the operative complaint. The first claim for relief requests the relief that we're talking about right now. It requested a waiver under his life insurance plan, and the judgment was entered in his favor on that claim for relief. So our argument is that plaintiff won that issue. And if you look at defendant's letter to plaintiff after that judgment, it suggests that they understood it the same way. Defendants wrote a long letter to plaintiff, and one of the things that they said was that because of the judgment, he would, quote, gain access to any benefits available to those in disabled status. And one of those benefits is life insurance waiver premium. So our position is that when the first litigation concluded, plaintiff had prevailed on that issue. So, therefore, defendants' arguments in the district court below their arguments regarding waiver, in our position, don't apply because there was nothing to waive. He'd already prevailed. Thank you. So, as a result, because of this first judgment, because of this first claim for relief that had been granted in plaintiff's favor, we think this really takes the heart out of the waiver argument that's made by defendants in the district court. The district court's decision on the waiver issue is based entirely on conduct that happened in the second litigation. And the district court and defendants are correct. In the second litigation, plaintiff didn't pursue that issue because he didn't have to. He prevailed on it. And he had received assurance from the defendants that he would get all the benefits that he's entitled to as a disabled person. So there's no reason for him to pursue it in the second litigation. When he did bring it up in the second litigation, it was at the very end, and the reason he brought it up is because it was clear that the litigation was winding down. This court had remanded it back to the district court to tidy it up. And so at that time, plaintiff brought it up to ensure that he would receive this benefit that he'd been entitled to the entire time. So that's why we believe there's no waiver of any issues, because he wasn't required to bring it up in the second litigation to start with. I would also like to address the other argument made by the district court regarding why plaintiff shouldn't be entitled to his life insurance waiver premium. And that has to do with the rule of mandate. As I already mentioned, we think the rule doesn't even apply, because plaintiff had already obtained the relief that he was seeking in the first litigation. So this wasn't a new issue that he was bringing up for the first time after appeal. He wasn't even asking the court to adjourn anything. He was simply reminding the court and the parties about this benefit that he hadn't received yet that he's entitled to by virtue of the first judgment. But even if there was some way to apply the rule of mandate, it's clear that plaintiff didn't violate this rule. The purpose of the rule of mandate is very simple. The idea is to prevent parties from re-litigating issues that were already decided by an appellate court. And here the court in its prior decision, if you take a look at it, there's no discussion or analysis or rulings with regard to the waiver. It wasn't addressed by the panel. Because it wasn't addressed by the panel, therefore, the parties in this report were free to revisit that issue on remit. So as a result, plaintiff wasn't re-litigating anything, and the rule doesn't apply. Defendants have raised... Judge Gould, if I could interject a question. I'd like to take you back to the first question Judge Kleinfeld asked as to what happened in the first district court decision relating to life insurance premiums. You said you felt he had prevailed on that. So what is the language and the ER side to where the district court said he prevailed on that? Well, the judgment is in the excerpts of record... One moment. 190. Excerpts of record at 190. And what the judgment does is it grants plaintiff judgment as to his first claim for relief. Now, it is true that the judgment does not specifically mention the life insurance benefit. Our argument is that that relief is incorporated into the judgment by virtue of the fact that he pleaded... Wait a minute. I thought the waiver of premiums was the third claim for relief. And what you quoted is addressed to the first claim for relief. It's mentioned in both claims for relief. And it's true that the third claim for relief talks about life insurance, and it's also true that that claim was dismissed by the district court. But if the court goes back and looks at the order dismissing that claim, the court will see that it wasn't a reflection on the merits of plaintiff's arguments as to whether he was entitled to the waiver of premium. What the district court said in dismissing that claim was, this claim is duplicative and redundant of the other claims that are being made. And therefore, I'm going to dismiss this claim and consider the arguments being made in this claim in the context of the other claims that you've raised, which I'm not dismissing. So it's true that the third claim was dismissed, but the first claim survived, and that claim does include allegations regarding the waiver. Oh, I think I get it. Tell me if I understand this right. What you're saying is the judge was right to dismiss the third claim as duplicative and redundant because it was, because she'd already made the claim for the premium waiver in the first claim for relief. Maybe you can shed some light on my understanding of this as well. To me, it seems like that is the same claim because this all stems from Delta's forcing your client to retire early or elect to retire early. And all along from the very beginning, what that had the effect of was doing him out of his premium waiver as well as his long-term disability payments. And once that was discovered that that was wrongful, it seems to me that your claim is just one claim. Put me back to where I was before your wrongful actions. That's how we see it, Your Honor. The district court's order dismissing the claims, as we understand it, was an attempt to essentially streamline the complaint and to consolidate things in a simpler way. And I think you've put it exactly right that at its core, this is an argument. The argument is you made a mistake, Delta, and you have to do whatever it takes to fix the ramifications of that, whether they revolve around disability benefit calculations or life insurance. All right, well, let's hear from opposing counsel. Thank you, Your Honor. Tim McDonald for defendants. I'm going to eschew an introduction and go right to the point that all of you have touched on. And my friend, Mr. Sessions, his understanding of the record is incorrect. And what's most important to understand is there's a fundamental sleight of hand that occurs in their briefs. And that is we hear talk about benefits and plaintiff as if there's no distinction between totally separate benefit plans, totally separate administrators, and totally separate obligations under ERISA. The first complaint understood that. And the first complaint, as I'll show you, does not allege what my friend just said. There are two relevant plans here. One, I'll just call it the disability plan. That is administered by the Administrative Committee of Delta Airlines. The disability plan and the Administrative Committee are parties to this action. They were parties to the first action. The other plan, with respect to life benefits, is not a party to this action. It was in count three, which was dismissed. It was administered by Aetna, which is not a party to this action. Aetna was dismissed. When Plaintiff filed American Each II, this action, he made a strategic decision. Let me just ask you a question about that, though. What he's claiming he's entitled to is lifetime premiums paid. Who would owe the premiums? Isn't that Delta? No, Your Honor, Aetna. I mean, isn't that an obligation between Delta, his employer, and him? No, Your Honor. With respect to the optional life insurance claim, the premiums were paid by the employees and simply passed through to Aetna, unlike other benefits, like retirement benefits, for example. So that's why there's a premium waiver. Because if Delta was paying in itself, there would be no need for a premium waiver because Mr. American Each wouldn't care about it. The whole reason why he wants the premium waiver is he had to pay for that benefit. And that's because the optional benefit was just that. It was not administered by the Administrative Committee of Delta Airlines. If you look at the plan for life insurance, which is in the record at Excerpts of Record 119 to 145, it does not mention the disability plan once. It does not mention the Administrative Committee once. Instead, here is how these two interacted. The Disability and Survivorship Plan would provide disability benefits. The Administrative Committee would make those decisions. Aetna, sitting over here, would say, tell us whether you're disabled or not. And if you are, we'll give you a premium waiver. In theory, Aetna could have waived that rule. Indeed, Mr. American Each himself wrote not to Delta, but to Aetna. That letter is in Excerpts of Record 146 and 147. Mr. American Each himself, the plaintiff, understood the difference. He did not write to the Disability and Survivorship Plan. He wrote to Aetna. The relationship between Delta and Aetna is no more than Delta and the United Way. Delta will say to its employees, United Way is a great cause. If you want to give them money, you can have the contributions deducted from your check. Same thing with the Aetna benefit. No difference. Wait a minute. I'm not sure I understand the analogy to United Way. In my prior experience, when there are ERISA plans with large employers, the insurance company is just an administrator, and whatever it pays, the employer has to pay the insurance company. It's just like having somebody else do your bookkeeping for you. So the idea that they're totally distinct is kind of passing me by here. Is there something special here? Yes, Your Honor. So a company could choose to sponsor the plan itself and administer it. The company could still have a hand in overseeing the decisions. Well, that's what I mean. Usually the companies don't because, well, Delta's job is flying people around on airplanes, and it likes to hire somebody else to do the management of medical claims and disability claims and that sort of thing. But it's Delta's money either way. Isn't that right? No, that's incorrect. Because sometimes the insurance companies will just administer plans where the funds are paid by the employer. Sometimes the insurance company will do both, administer and pay out of their own pocket. And then within that last set, you have two different types. And this gets to your question, Judge Kleinfeld. One can be the insurer just walking up and saying to Delta, we have a life insurance policy. Let us give access to that to your folks. If you will sign this contract with us that makes it available to them, we'll do everything else. You don't pay anything. You don't administer it. Under ERISA, those types of claims fall into safe harbor. They're not even ERISA claims. Aetna's got an issue on its own under state law in that circumstance. If Delta is involved in making sure that they put the summary plan description out, making sure that they oversee Aetna, making sure that the claims are decided in a certain manner or under a certain rubric of rules, then Delta is creating an ERISA plan because they are administering it themselves or they have the ultimate right to oversee the administrator. But that's why this plan is different, other than simply putting it in front of the participants and saying, if you want to buy this, go ahead. They had no funding of it. They had no say over decisions. And there's no allegation in any complaint. And there's no facts that would get beyond that. There's another even more important point, though, that moots all of that. That plan was terminated. I'm sorry, I can't hear you. Just clamp down. Hold on. Why would he have gotten this letter, then, where the plans wrote Merconiak that he would, quote, gain access to any benefits available to those in disabled status, close quote. And obviously one of those benefits is the waiver of premiums on the life insurance. It sounds like this is pretty complex, this relationship between the plan and Aetna and Delta. And it looks like they both understood it the same way from that letter, that he would gain access to any benefits available to those in disabled status. Thank you for that point, because that leads right to my next point. The Aetna plan ended in 2007. It went away. December 31, 2007. That is undisputed. I can give you the record site if you need it. A new plan came up in 2008 administered by MetLife. Mr. Merconiak had a life insurance benefit under that plan until 2014. And then he stopped paying premiums. And he lost that benefit. 2014 is an important date, Your Honor, because the letter that you just quoted said exactly what you said it did. But it was referring to the MetLife plan, which came into being on January 1, 2008. The plan that we've been talking about existed for no one after December 31, 2007. And that is why we argue at the back of our brief, ERISA does not require under any provision that we have to create a plan of one. Whereas if he had stayed there and worked the whole time, if he'd been disabled the whole time, he would have never been able to get this benefit. There's no provision of ERISA that permits that. This plan evaporated on December 31, 2007. And a new life insurance plan came in. He was in that plan. We cite it. We go right through our brief on it. And he stopped paying premiums in 2014. That's a lot to digest. I want to stop and let the panel ask any questions on that before I go to close at one point. Because there's a Ninth Circuit case on point about not giving benefits when a plan has been terminated like that. If there are no questions, I'll direct the courts to the Peralta case. Peralta, which is cited in our brief, says, look, you're looking for relief when the plan no longer exists for anybody. You can't get that relief. And the Supreme Court's decision in Cigna v. Amara does not change that. Courts have cited Peralta, including in the Ninth Circuit, since then. I see my time is up. If I may make one more point, I will. Otherwise, I realize my time is up. Make your last point. I'm going to give Mr. Sessions a minute, too. Thank you. In the complaint, there is not a single reference to life insurance. We were so not on notice of this. In the second Merkenich case, we didn't even plead certain defenses that would apply if there was some reference to it. So after Merkenich won, he doesn't appeal the parts that he lost, like count three. He files a new complaint, and he doesn't even mention life insurance. What he is, therefore, asking for is consequential damages. Because I lost this benefit over here, I, therefore, lost that. And the Supreme Court in Massachusetts, Mutual v. Russell, has said ERISA does not provide for consequential damages. Are there any other questions? I'm happy to answer them. I appreciate the court's indulgence. Thank you very much, counsel. Mr. Sessions, you have a minute. I only have a minute. So I think what I'd like to do is address the last comment made by defense counsel with regard to the argument appears to be that even if there was a wrong here, there's no remedy. That appears to be what defendants are arguing. They're saying there's no plan that he can be reinstated to anymore. So even if we messed up, you're tough. You're out of luck. And it's clear, as this court knows from numerous ERISA cases, ERISA has broad equitable relief. Let me follow up on that. I do have a question about that. He says your client did have life insurance, and he was paying premiums, and then he stopped paying premiums. Does that policy still exist? I don't know the answer to that. Defense counsel would know the answer to that. The idea here, however, is that that life insurance, that new replacement life insurance, he may have been entitled to it, but it's not the life insurance he deserved, that he was entitled to by virtue of his disability. The life insurance policy benefit, waiver of premium benefit that he was entitled to by virtue of his disability, wasn't at no one. So I understand that. So if it no longer exists, then what? What are you asking for? Well, I don't know the full contours of whatever Delta's plans are now. But under ERISA and its equitable remedies, plaintiffs should be put in a position where he has the exact same life insurance coverage and the same waiver of premium provision that he would have had had Delta done the right thing in the first place. So if that means reinstating him to a plan with identical terms, or whether that means going out onto the open market and buying him an individual policy, forcing those same benefits, ERISA's broad equitable powers allow whatever remedy is necessary in order to turn back the clock and put him where he should be. All right. Thank you, counsel. So, Merikinchik v. Delta is submitted. And we will take up Oxlabs v. BitPay.
judges: Kleinfeld, Wardlaw, Gould